UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| George Martina ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 17 CV 50027 |
| ) | Magistrate Judge Iain D. Johnston |
| Nancy A. Berryhill, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

In 2009, plaintiff George Martina developed back pain and eventually stopped working. In 2011, he filed Title II and Title XVI applications for disability benefits. On February 12, 2013, an administrative law judge ("ALJ") found that plaintiff was not disabled because he was capable of doing light work. Plaintiff did not appeal that decision, but filed new disability applications. These were considered by a different ALJ who concluded, in October 2015, that plaintiff was still capable of doing light work. However, because plaintiff turned 55 on May 26, 2014, plaintiff qualified as disabled, as of that date, under the grid rules. This appeal concerns the finding that plaintiff was not disabled during the 15-month period from the prior ALJ's ruling, which was *res judicata*, until May 26, 2014. Plaintiff argues that the ALJ's analysis was flawed in multiple ways. This Court finds that a remand is required, primarily because the ALJ's credibility analysis.

## BACKGROUND

The relevant medical record, as identified by the parties and the ALJ, covers the period from roughly May 2012 to May 2014.

---

[1] Nancy A. Berryhill has been substituted for Carolyn W. Colvin. Fed. R. Civ. P. 25(d).

1

On May 23, 2012, plaintiff was treated by Christopher Parrett, a chiropractor. Dr. Parrett (the label plaintiff uses) examined plaintiff, performed several tests, and reviewed x-rays showing that plaintiff had degenerative joint disease at C5 and C6. R. 308. Dr. Parrett recommended that plaintiff start a "corrective care plan" consisting of 3 visits a week for 12 weeks and also do home exercises to stabilize his muscles. R. 308. It does not appear that plaintiff followed through with these recommendations, although he later saw Dr. Parrett several more times. *See* R. 311 (June 21, 2012 visit); R. 312 (May 6, 2013 visit).

On March 13, 2013, plaintiff treated with Dr. Kimberly Strange at the Crusader Clinic. Dr. Strange performed a physical examination, and recommended that plaintiff start taking a Diclofenac Sodium Tablet for the back pain and also start home exercises. R. 297.[2] An interpretation of an x-ray taken the same day stated the following: "Disc space heights vertebral body heights and alignment are normal. Multilevel facet arthrosis. Severe atherosclerotic calcification of the abdominal aorta and iliacs." R. 301.

On May 8, 2013, plaintiff saw Dr. Kimberly Miller at the Crusader Clinic. Plaintiff reported that the Diclofenac did not help his back pain, that he was continuing to see the chiropractor, that he was continuing to use Ibuprofen and Tylenol, and that he wanted a prescription for a cane. R. 295. Dr. Miller examined plaintiff and recommended that he continue his current care and that he try physical therapy and "possible further imaging." *Id.* At plaintiff's request, she issued a prescription for the cane. R. 322.

---

[2] Dr. Strange made a number of examination findings about plaintiff's muscle strength and flexibility. R. 297. The Court will not summarize these findings, nor the findings made by other doctors because, as discussed below, a medical expert is needed to accurately assess these findings. As in most back pain cases, the plaintiff highlights those findings suggesting his problems were severe; whereas, the ALJ and the Government emphasize those findings suggesting they were mild or non-existent.

On May 28, 2013, Dr. Parrett completed a four-page "Physical Medical Source Statement" in which he opined, among other things, that plaintiff could sit, stand, or walk each for less than two hours in an eight-hour workday. R. 325.

On August 15, 2013, plaintiff was examined by Dr. Ramchandani, a consultative examiner. He noted, among other things, that plaintiff had a normal gait and was "able to walk unassisted for 50 feet." R. 314. He diagnosed plaintiff with "[a]rthralgia of lumbar spine secondary to arthritis." R. 315.

On August 28, 2013, plaintiff was interviewed by Dr. John Peggau, a consultative examiner. He diagnosed plaintiff with alcohol use disorder, in remission; unspecified bipolar disorder; and unspecified personality disorder. R. 319.

On March 18, 2014, plaintiff had a CT lumbar scan. The report gave the following conclusion: "No discrete disc herniation seen at any lumbar level, however degenerative changes are resulting in bilateral foraminal stenosis at L4-5, right worse than left." R. 349. On March 24, 2014, plaintiff was examined by Dr. Syed Hassan who suggested that plaintiff seek a surgery referral and apply a lidocaine patch every 12 hours. R. 356.

On April 16, 2014, plaintiff was seen by Dr. Brian Braaksma who examined plaintiff and reviewed four x-rays. He diagnosed plaintiff with degenerative disc disease and facet arthropathy, and recommended that plaintiff enroll in "a course of physical therapy for core strengthening" and that he take Mobic for six weeks. He also suggested an MRI to "rule out neurocompression." R. 337.

Plaintiff saw Dr. Braaksma again on May 23, 2014. Plaintiff reported that his back pain was about the same, rating it 3/10 at rest and 10/10 while active. Plaintiff stated that he was not taking any pain medications and was not doing physical therapy. R. 333. Dr. Braaksma told

plaintiff that there was no surgical option available and encouraged plaintiff to "pursue an exhaustive course of conservative care," including physical therapy. R. 334.

A hearing was held on September 17, 2015. Plaintiff and a vocational expert testified. No medical expert was called.

On October 15, 2015, the ALJ issued a decision finding that plaintiff had the residual functional capacity ("RFC") to do light work, subject to certain restrictions including that he be allowed to walk with a cane and that he only be allowed to climb stairs occasionally and then by using a cane. The ALJ found plaintiff's testimony was not credible for reasons discussed blow. As for the medical opinions, the ALJ gave no weight to Dr. Parrett's opinion because, among other things, he only saw plaintiff a single time and did not consider any "objective evidence such as x-rays."[3] R. 24-25. The ALJ gave "little weight" to the State agency opinion finding that plaintiff could do medium work because the opinion provided no explanation for why the prior ALJ's light-work finding was increased to medium work. R. 25.

## DISCUSSION

In his opening brief, plaintiff raises the following four arguments for remand: (1) the ALJ failed to include an RFC restriction that plaintiff be permitted to use a cane "to balance and to stand still"; (2) the ALJ failed to include an RFC restriction for plaintiff's moderate impairment in concentration, persistence, or pace; (3) the ALJ improperly mechanically applied the age categories in determining that plaintiff was an individual approaching advanced age on the date last insured; and (4) the ALJ erred in evaluating plaintiff's credibility in various ways. In its response, the Government focuses initially on a separate line of argument, which is the

---

[3] Although not raised by plaintiff as an argument for remand, it appears that plaintiff saw Dr. Parrett more than one time and that Dr. Parrett also viewed plaintiff's x-rays, which suggests that the ALJ's rejection of this opinion relied on several factual errors. Alone, these types of factual errors often require remand. *Vandiver v. Colvin*, 14 CV 50048, 2015 U.S. Dist. LEXIS 163328, *10-11 (N.D. Ill. Dec. 7, 2015).

4

assertion that the objective medical findings and treatment recommendations made by the treating and consulting physicians (Drs. Strange, Miller, Ramchandani, and Braaksma) suggested that plaintiff's back problems were not serious enough to prevent light work. The Government argues, for example, that these doctors "opined that plaintiff had mildly reduced range of motion in his hips and back, but otherwise normal muscle strength and motor function." Dkt. #15 at 1.

The primary intersection point of these competing arguments is the ALJ's credibility analysis. The Court finds that it is the key plank in the ALJ's decision, especially given that the ALJ did not rely on any particular medical opinion, and it is therefore the appropriate starting point for the analysis. The ALJ's credibility explanation was set forth in the following paragraph:

> As noted above, the claimant testified to extensive and wide-ranging pain. In addition to the supportive medical findings, consideration of regulatory factors leads to a conclusion that the allegations of disabling symptoms and limitations from pain are not entirely credible and that a light RFC is appropriate. 20 CFR 404.1529(c)(3) and 416.929(c)(3); SSR 96-7p. He *requested* the cane be prescribed; it did not originate with a physician. The testified frequency of regular use of cane is not supported in the medical records prior to the DLI. He has been inconsistent with his statements on alcohol use. In addition, he has alleged depression and/or anxiety, but seen no mental health professional, received no medication (he stopped unilaterally when it did not work in his personal estimation) and suffered a CVA when he admittedly was not complying with his medical regimen. In sum, while there are signs and symptoms documented by objective evidence, the severity and extent of the resulting limitations is not consistent with his allegations.

R. 24 (emphasis in original).[4] The above paragraph sets forth three, possibly four, rationales. The three explicit rationales are the cane prescription and frequency of use; the allegedly inconsistent statements about alcohol use; and the failure to seek or adhere to treatment for

---

[4] The ALJ claimed to be applying the "regulatory factors" in SSR 96-7p. Those factors are the following: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, taken to relieve pain; (6) any measures other than treatment used to relieve pain; and (7) any other factors concerning functional pain limitations.

5

psychological problems and the 2015 stroke. The brief reference at the start of the paragraph to "supportive medical findings" arguably suggests a fourth rationale.

After reviewing the arguments and the record, the Court finds that the first two credibility rationales are not supported by the evidentiary record or rest on unsupported assumptions.

**Cane Prescription and Usage.** With regard to the cane, the ALJ made two observations supposedly casting doubt on plaintiff's overall credibility. The first was that plaintiff requested a prescription for a cane, but that this request did not "originate" from the doctor. Although this factual statement is true, the Court cannot fathom why it casts doubt on plaintiff's *credibility*. The ALJ did not explain her reasoning, but she presumably believed that there was something suspicious or untruthful in this exchange. However, as plaintiff persuasively argues, such a request was not materially different from "a patient asking for pain medication if they are in pain" and that it is "the doctor's action in prescribing the medication, or, in this instance, a cane, that puts the doctor's imprimatur on the patient's request." Dkt. #14 at 17. Neither the ALJ nor the Government offers any authority, legal or otherwise, to suggest that doctor's diagnosis should be doubted merely because it was in response to, or conformed with, a patient request. The ALJ stated that the cane was plaintiff's "idea" as if only one person can be given credit for coming up with a medical treatment idea. Perhaps the ALJ believed that the doctor merely wrote the prescription to be nice, on the theory that a cane wouldn't do any harm if it were not needed. Although this is possible, there is no concrete evidence to support this conclusion. And even if there were, it is not clear why this should affect plaintiff's credibility; it would seem more relevant to the *doctor's* credibility.

The second cane-related credibility finding was the ALJ's assertion that the "testified frequency of regular use of cane is not supported in the medical records." But the ALJ did not

6

discuss the evidence nor identify what type of evidence (other than plaintiff's testimony) that could be offered to show that plaintiff was using the cane regularly. The ALJ did not rely on any medical statements. In reviewing the record, the Court notes that there was some evidence that plaintiff was using a cane. In his report, Dr. Ramchandani referred to plaintiff's ability to walk with and without cane. R. 313. Dr. Peggau observed plaintiff using a cane.[5] The Court ultimately does not know what evidence led the ALJ to conclude that plaintiff was not using the cane regularly. In sum, the ALJ's first credibility rationale is not supported by substantial evidence.

**Statements About Alcohol Use.** The ALJ's second credibility rationale is likewise unfounded. The ALJ believed that plaintiff made inconsistent statements about his current alcohol use. But the ALJ's conclusion rests on a mischaracterization of plaintiff's testimony. In her decision, the ALJ stated that plaintiff had testified that he "[had] not been drinking since 2013." R. 22. This statement suggests that plaintiff, who had an earlier alcohol problem, essentially stopped cold turkey, never having a single drink again. The ALJ then noted that there were statements in the record suggesting that plaintiff sometimes "drinks socially." *Id.* The ALJ thought these statements contradicted the total-abstinence testimony. But this conclusion collapses once plaintiff's testimony is considered fully and fairly. Here is the relevant testimony:

> Q [by the ALJ] So, one thing I did remember reading about, though, was alcohol use. Were you still drinking in 2013?
>
> A Rarely. Occasionally, but not that much.
>
> Q What's rarely and occasionally mean in terms of your drinking?
>
> A Well, maybe once a month I'll go out with a friend of mine, we'll have a cheeseburger and a beer. And because I can't afford it, she'll buy it. And it's pretty much the same now.

---

[5] The Court acknowledges that Dr. Peggau made a vague statement questioning whether the cane was medically necessary. R. 318 (plaintiff "walked with a cane but it was not clear how dependent he was upon the cane").

R. 55. As this testimony makes clear, plaintiff did not claim that he *never* drank, but rather that he curtailed his drinking and only drank "occasionally" or "rarely." The ALJ omitted this qualification, thereby allowing the ALJ to misleadingly claim that plaintiff was lying. This factual error is a basis for a remand. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (remanding because the ALJ's credibility determination "misstated some important evidence and misunderstood the import of other evidence"); *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (an ALJ may not base a credibility determination on "errors of fact or logic").

In sum, two of the three of the ALJ's explicit credibility rationales are unsupported. The third rationale was that plaintiff received inconsistent treatment, which on the surface might relate to the Government's argument summarized above. However, the ALJ only raised the inconsistent treatment issue as it related to plaintiff's psychological problems and his 2015 stroke, neither of which were relevant to the back problems.

This leads to the Government's argument that the objective examination findings were mild and that doctors only made conservative treatment recommendations and that plaintiff did not follow those recommendations. Although the Court finds that these rationales are much stronger than the ones relied on by the ALJ, the Court finds that they cannot support an affirmance for three reasons.

First, it is unclear whether—and to what extent—the ALJ was relying on these rationales. The ALJ did not include them in the credibility paragraph analyzed above. Although the third rationale referred to non-compliance with treatment, the ALJ specifically limited that finding to the psychological problems and the stroke. There was the one passing reference at the start of the paragraph to the "supportive findings," which perhaps could be construed as a finding that the objective evidence was mild. The Government argues that the ALJ relied on this rationale based

8

on the earlier narrative of plaintiff's medical visits. Essentially, the Government is asking that the Court read between the lines and extract an implied rationale from the ALJ's wording choices in describing the medical history. There is some evidence arguably supporting such an interpretation. For example, the ALJ noted that new x-rays in April 2014 "showed only spondylosis and mild-moderate loss of disc space with moderate facet arthropathy." The ALJ's addition of the word "only" is one such clue hinting at the implied rationale. However, the Court is reluctant to rely on these indirect clues when the ALJ simply could have been more explicit and clear. The type of analysis that should have been provided, if the ALJ were relying on this line of argument, is provided in the Government's brief. But the Government's brief only accentuates what is missing from the ALJ's decision, and therefore runs afoul of the *Chenery* doctrine. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("the *Chenery* doctrine [] forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced").

Second, because the ALJ did not call a medical expert and because the ALJ rejected the opinions of the State Agency physicians, the ALJ's supposed implied analysis—that the medical findings and treatment recommendations were mild—rests on a layperson analysis of the meaning and significance of the particular findings. *See Lambert v. Berryhill*, No. 17-1627 at p. 8 (7th Cir. July 19, 2018) ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves."). This Court need not go through the particular findings cited by each side here to buttress their conclusions because a medical expert is needed to interpret these findings. More broadly, on remand, the ALJ should consider the discrete examination findings in conjunction in the doctor's broader diagnoses and treatment recommendations. *See id.* at p. 14 ("But none of Lambert's physicians interpreted these medical

9

findings as inconsistent with his reports of recurrent and worsening pain and functional limitations. Even when tests showed no hardware malfunction, coordination issues, or strength deficits, Lamberts physicians continued to treat his pain.").

Third, to the extent that the ALJ were relying on an inconsistent treatment rationale, the ALJ was obligated to consider possible mitigating explanations. As the Seventh Circuit has held, an ALJ cannot "rely on an uninsured claimant's sparse treatment history to show that a condition was not serious without exploring why the treatment history was thin." *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014); *Craft*, 539 F.3d at 679 ("although the ALJ drew a negative inference as to Craft's credibility from his lack of medical care, she neither questioned him about his lack of treatment or medicine noncompliance during that period, nor did she note that a number of medical records reflected that Craft had reported an inability to pay for regular treatment and medicine."). Here, the ALJ did not consider these possibilities. Plaintiff stated that he did not get certain treatments because of an inability to pay for them. *See* R. 268 ("I can't set up regular appointments as I don't have the means to pay for them."). He also testified at the hearing that he had a hernia problem that allegedly prevented him from doing physical therapy recommended by his doctors. The ALJ should explore these, and any other explanations, before relying on a non-compliance rationale.

Another credibility factor that should be specifically assessed on remand is plaintiff's activities of daily living. The ALJ did not analyze this factor. As plaintiff argues in his opening brief, he testified that he spent most of his time watching movies, that he could no longer take walks for exercise, and that he relied on others to assist him in bringing his groceries home. Dkt. #14 at 19. The ALJ should specifically consider this line of evidence on remand.

In sum, the Court finds that the ALJ's credibility rationale is incomplete and relies on two factually unsupported claims. The Government has argued that the ALJ's credibility finding could be supported based on the mild objective findings, the conservative treatment recommendations (unlike many back pain cases seen by this Court, plaintiff was not even treated with steroid injections), and plaintiff's non-compliance with those recommendations. Although not framed as such by the Government, this is basically a harmless error argument. However, the Court is not persuaded that the harmless error doctrine is appropriate in light of the problems discussed above.

Having found that a remand is warranted based on credibility issue, the Court will not address the remaining arguments with one exception. Plaintiff argues that the ALJ failed to explain why she rejected plaintiff's testimony that he needed the cane to balance while standing. The ALJ's RFC assumes that plaintiff could stand for six hours in a workday. The Court agrees that the ALJ should have addressed this issue. Plaintiff's counsel raised it with the vocational expert who agreed that plaintiff would not be able to do light work if he needed to use a cane for balance while standing. Moreover, even though the ALJ questioned plaintiff's credibility and specifically questioned whether he regularly used a cane, the ALJ still included several cane-related restrictions in the RFC (for walking and going up stairs). The ALJ thus found that plaintiff was credible *to some extent*. If the ALJ accepted some of the cane testimony, then why did the ALJ reject the part about needing a cane for balance? An explanation should be provided.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted, the government's motion is denied, and this case is remanded for further consideration.

Date: July 26, 2018          By: _____
                                 Iain D. Johnston
                                 United States Magistrate Judge